## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**EDWIN PAWLOWSKI,**

   **Petitioner,**

   **v.**                                            Civil Action No.:  MJM-24-2489

**WARDEN, FCI CUMBERLAND, and**
**FEDERAL BUREAU OF PRISONS,**

   **Respondents.**

---

### <u>MEMORANDUM</u>

Petitioner Edwin Pawlowski, an inmate confined in the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons ("BOP") practice of providing projected release dates.  ECF No. 1.  Respondents have filed an Answer seeking dismissal of the Petition.  ECF No. 5.  The issues having been fully briefed, the Court finds a hearing to be unnecessary.  *See* Local Rule 105.6 (D. Md. 2025).  For the reasons stated in full below, the Petition shall be dismissed.

### BACKGROUND

**I.      Petitioner's Allegations**

Petitioner asserts that staff at FCI-Cumberland have refused to calculate his Federal Time Credits ("FTCs") under the First Step Act ("FSA") which would provide him with dates he could be placed into a Residential Reentry Center ("RRC") or Home Confinement ("HC").  ECF No. 1 at 3.  He states that he first approached his case manager on June 15, 2024, and provided him with a copy of Petitioner's "release calculation which included his projected [FTCs] under the First Step Act."  *Id.*  Although Petitioner's case manager, Mr. Bosley, accepted the copy and said he

would discuss and verify it with the unit team manager, Petitioner had not heard from Mr. Bosley by June 30, 2024, and contacted him again. *Id.* No response was received. *Id.*

Petitioner states he started the administrative remedy process on July 16, 2024, by submitting a BP-8 form seeking an informal resolution. ECF No. 1 at 3. Two days later, a response was provided from unit team manager Washington, which stated that Petitioner had 365 FTC days applied toward his release date and had accrued 595 FTCs toward transfer to a Residential Reentry Center or Home Confinement. *Id.* The response did not mention anything about *projected* FTCs or the calculation that Petitioner had provided in his BP-8. *Id.*

Not satisfied with the response to his BP-8, Petitioner filed a BP-9 Request for Administrative Remedy with the Warden of FCI-Cumberland. ECF No. 1 at 3. He complained that the informal resolution response did not address the issue he presented, and again requested that "projected FTCs be calculated and applied in accordance with 28 C.F.R. § 523 and BOP Program Statement 5410.01, Section 10, Page 16." *Id.* In response to his BP-9, the Warden provided the following information (ECF No. 1-4 at 2):

> Our review of the matter indicates that your Projected Release Date/FSA Conditional Release Date is August 3, 2030. According to Program Statement 5410.01, *First Step Act of 2018-Time Credits: Procedures for Implementation of 18 U.S.C. 632(d)(4)*, "FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews, based on a completed 30-day period. No FTCs will post to the inmate's record if he/she has not accrued 30 days in earning status." Currently, you have earned 365 FTCs that already have been applied toward your release date. You also have earned 610 FTCs that are to be applied toward RRC/HC placement. Future FTCs to be applied toward RRC/HC are not being projected. While taking into consideration a 365-day Second Chance Act recommendation, coupled with 610 earned FTCs toward RRC/HC placement, this would total a 975-day recommendation. With your projected release date of August 3, 3030 [sic], the earliest date you could release to an RRC/HC placement would be December 3, 2027, which is currently outside the timeframe to submit a referral.

> Based on the foregoing, your request to be referred immediately for an RRC/HC placement is denied.

Petitioner appealed the Warden's response to the BOP regional office by filing a BP-10, claiming that the response "ignores completely the codified statutes and regulations outlined by the Director of the BOP." ECF No. 1 at 4; ECF No. 1-5. Petitioner abandoned the administrative remedy procedure before receiving a response to his BP-10, because, in his view, the Warden's response was a clear indication that "the BOP staff will not follow their own procedure in processing projected FTCs and RRC/HC placement." ECF No. 1 at 4. He adds that "[c]ontinuing the appeal process would be futile and take an additional 120 days to complete, exceeding the time required for transfer into pre-release custody if the projected FTCs were properly applied." *Id.*

Petitioner alleges that based on his calculations of projected FTCs and Second Chance Act ("SCA") credits, he has less than a few months left until his placement in a Residential Reentry Center or Home Confinement and the referral should have already been submitted by his case manager. ECF No. 1 at 5–6. He asserts that this is required by Program Statement 5410.01. *Id.* at 6. Petitioner adds that he is being denied due process because the BOP has failed to apply all of the time credits as directed by Congress, codified in statute, and outlined in BOP policy which imposes "an atypical hardship on the inmate by not properly calculating and applying his projected FTCs." *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Petitioner also raises a claim under the Administrative Procedures Act ("APA") and alleges that the BOP is violating the APA because it is "not following its own procedures, policy, statutes, and intent of Congress as stated in the First Step Act." ECF No. 1 at 6. He asserts that the "unreasonable delay" in projecting his FTCs as required by Program Statement 5410.01 is "a direct abuse of discretion by the BOP staff and thus a violation of APA statutes." *Id.* In Petitioner's

3

view, he is entitled to judicial review of the BOP's actions under 5 U.S.C. § 792 because he is "a person suffering legal wrong because of agency action." *Id.* Petitioner also raises a claim under the Fourteenth Amendment, stating that the failure to provide him with projected FTCs is a denial of fundamental fairness, amounts to discrimination and disparate treatment, and violates the equal protection clause. ECF No. 1 at 6.

As relief, Petitioner asks this Court to order the FCI-Cumberland staff to calculate his projected FTCs and apply them toward his placement in a Residential Reentry Center or Home Confinement. ECF No. 1 at 8.

## II.    Answer

Respondents assert that the Petition must be dismissed because Petitioner failed to exhaust administrative remedies and his futility arguments are unavailing; the BOP's determination that projected earned FSA credits cannot be applied toward prerelease custody is not reviewable by this Court; the Petition fails to state a plausible claim for relief; Petitioner has no statutory or constitutional right to transfer to prerelease custody; and the equal protection claim does not include sufficient facts to show Petitioner is a member of a protected class or how he has been treated differently from someone who is similarly situated.[1] ECF No. 5 at 3.

Respondents explain that Petitioner is serving 180 months followed by three years of supervised release for mail fraud, wire fraud, honest services fraud, federal program act bribery, travel act bribery, and making material, false statements to the FBI. ECF No. 5-1 at 2–3, ¶ 3. Petitioner's projected good conduct time release date is August 3, 2031. *Id.* at 3, ¶ 4.

---

[1]    Respondents additionally assert that the Federal Bureau of Prisons is not a proper party for this habeas corpus proceeding because it is not the immediate custodian over Petitioner. ECF No. 5 at 6. They correctly note that the only proper respondent in a § 2241 proceeding is the petitioner's custodian, in this case the Warden of FCI-Cumberland. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). The Federal Bureau of Prisons will be dismissed as a respondent.

On December 6, 2019, it was determined that Petitioner is eligible to earn FSA credits. ECF No. 5-1 at 3, ¶ 5. As of September 4, 2024, he has earned 365 days of FSA credit that can be applied toward his statutory release date, resulting in a projected release date of August 3, 2030. *Id.* at ¶¶ 7, 8. Additionally, Petitioner has earned 625 days of FSA credits that can be applied toward prerelease custody. *Id.* at ¶ 9. As of September 4, 2024, the earliest Petitioner could be transferred to prerelease custody would be November 16, 2028. *Id.* at ¶ 10.

Petitioner has not been evaluated under the Second Chance Act for transfer to a halfway house or home confinement because he is not within 17 to 19 months of his projected good conduct time release date, his projected FSA release date, or his earliest potential transfer to prerelease custody through application of FSA time credits earned to date. ECF No. 5-1 at 3–4, ¶ 11.

## III.   Petitioner's Response

Petitioner argues in his Response to the Answer that requiring him to exhaust administrative remedies would amount to a futility because "there is no circumstance which would result in any different outcome through the final stage of the administrative remedy process." ECF No. 7 at 9. He argues that the BOP has improperly taken a "position to not adhere to its own procedures and statutes in the prospective application of FTCs toward prerelease placement." *Id.* Petitioner points to the fact that he has been given four different dates as his conditional projected release date for placement into prerelease custody as evidence that the administrative remedy procedure is a futility. *Id.*

## IV.   Respondent's Reply

Respondent asserts that Petitioner's assertion that exhaustion of administrative remedies would be futile is without merit and, further, that his efforts to complete the process after filing his petition with this Court are untimely. ECF No. 8 at 2–3. Respondent reiterates the argument that

Petitioner's assertion that administrative exhaustion would take too long is without merit because the entire process takes about four months.  *Id.* at 3 (citing *Ewing v. Carter*, Civ. No. BAH-22-3029, 2024 WL 4289534, at *3 (D. Md. Sept. 25, 2024) (citation omitted)).  Petitioner did not claim that he should be transferred to prerelease custody until February or December of 2025, and his Petition was filed with this Court on August 26, 2024.  Thus, the period he had before he was entitled to a transfer was far longer than the four months it would take to exhaust administrative remedies.  *Id.*  Moreover, according to Respondent, the urgency for a resolution to Petitioner's administrative remedy complaint is not a viable excuse for failing to utilize every step of the process prior to filing a petition with this Court.  *Id.*  Respondent argues that if Petitioner's futility argument were permitted, inmates such as Petitioner could simply wait until the time restraints do not permit a full administrative review before seeking judicial relief.  *Id.* at 3–4.

Respondent also argues that Petitioner's assertion that he would suffer irreparable harm if he were required to exhaust administrative remedies is meritless because he had sufficient time to exhaust administrative remedies; similar arguments regarding the length of time it takes to exhaust administrative remedies have been rejected by other courts; and irreparable harm cannot be established where, as here, the petitioner is not entitled to have projected, unearned FSA credits applied toward prerelease custody.  ECF No. 8 at 5.

Lastly, Respondent asserts that Petitioner is not entitled to "immediate application of unearned, projected FSA credits."  ECF No. 8 at 6.  Respondent explains that Petitioner's argument that "FSA credits are applied the same as good conduct time credits . . . is misplaced because . . . unlike good conduct time credits which are automatically awarded, an inmate must first *earn* FSA credits equal to the remainder of the imposed prison term before the credits can be applied."  *Id.*

**V.    Pending Motions**

In his Motion to Amend and Supplement Pleadings, Petitioner contends that exhaustion of administrative remedies would result in irreparable harm to him because it would require more time to complete than he surmises he is required to serve in his current status.  ECF No. 9.  He states that "[e]veryday the Petitioner is incarcerated rather than serving the final portion of his sentence on prerelease custody (as mandated by the First Step Act) results in irreparable harm and injury since the Petitioner cannot get back the time he will spend in incarceration." *Id.*  Petitioner then filed a Surreply to Respondent's Response in Opposition.  ECF No. 10.

In a second Motion to Amend and Supplement Pleadings, Petitioner provides the response to his BP-10 appeal from the BOP Central Office.  ECF No. 11.  Petitioner complains that the response provides another date for his projected date that differs from other dates he had been provided in the past causing him to be more confused as to the correct date for his placement into prerelease custody.  *Id.*  The response provides March 12, 2028, as Petitioner's current projected release date as of November 18, 2024, "via FSA Conditional Release."  ECF No. 11-1 at 2.

In a third Motion to Amend and Supplement Pleadings, Petitioner seeks to amend his Reply to the Government's Response in Opposition.  ECF No. 14.  Following this motion, Petitioner filed a Supplement to his Petition.  ECF No. 15.

Pleadings filed in a habeas corpus proceeding pursuant to 28 U.S.C. § 2241 are governed by Rule 1(b) of *The Rules Governing Section 2254 and Section 2255 Cases in the United States District Courts* which states that this Court "may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)."  Those rules contemplate the following pleadings: a petition, an answer, and a reply from the petitioner.  *See* Rules 3 and 5.  The multitude of pleadings and motions filed in this case are largely duplicative of claims and arguments already raised in earlier pleadings.  Petitioner's Motions to Amend will therefore be denied.

# DISCUSSION

## I.    Exhaustion

While this Court's power to entertain a petition for writ of habeas corpus under 28 U.S.C. § 2241 is broad, it "has long been established that the district court's discretion to entertain habeas petitions and exercise the power of the writ is not boundless." *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010). "[P]rudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Such is the case where there is a failure to exhaust administrative remedies.

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies before seeking habeas review under § 2241. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms*, 627 F.3d at 530–33 (same); *McClung v. Shearin*, 90 F. App'x. 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *Miller v. Clark*, 958 F.2d 368, 1992 WL 48031, at *1 (4th Cir. 1992) (unpublished table opinion) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies."); *Henderson v. Warden, Edgefield Satellite Prison Camp*, No. 2:09-CV-01599-RBH, 2009 WL 3317149, at *2 (D.S.C. Oct. 14, 2009) ("It is well settled that a federal prisoner is required to exhaust his administrative remedies within the Bureau of Prisons before filing an action pursuant to § 2241.").

Petitioner is therefore required to exhaust administrative remedies prior to filing his petition in this Court. The BOP Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper

form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to his formal written complaint, he may appeal to the regional director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the regional director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the regional director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion is "normally desirable" in order to allow for the development of a factual record and to permit the agency an opportunity to exercise its discretion or apply its expertise, *McKart v. United States*, 395 U.S. 185, 193–94 (1969), as well as to allow the agency to correct its mistakes, which conserves judicial resources at the same time, *McCarthy*, 503 U.S. at 145–46.

It is undisputed that Petitioner failed to exhaust administrative remedies prior to filing his Petition with this Court. The disputed issue is whether he has presented a viable excuse for failing to do so. A clear failure to exhaust available alternative remedies generally forecloses habeas relief. *Timms*, 627 F.3d at 531 (citing *Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004) ("habeas corpus is an extraordinary remedy typically available only when the petitioner has no other remedy")). To excuse a failure to exhaust administrative remedies, there must be some indication that the process was unavailable. The Supreme Court in *Ross v. Blake*, 578 U.S. 632 (2016), explained that the remedy process is unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates";

(2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 643–44. The inmate requesting an exhaustion waiver on the basis of unavailability bears the burden of establishing by a preponderance of the evidence that "he was prevented, through no fault of his own, from availing himself of that procedure." *Washington v. Rounds*, 223 F. Supp. 3d. 452, 459 (D. Md. 2016) (citing *Graham v. Gentry*, 413 Fed. App'x. 660, 663 (4th Cir. 2011)). This burden of proof requires more than "naked assertions without any specificity or evidentiary support." *Martinez v. Warden, USP Hazelton*, No. 2:16CV31, 2017 WL 988661, at *7 (N.D.W. Va. Feb. 16, 2017), *report and recommendation adopted*, No. 2:16-CV-31, 2017 WL 988660 (N.D.W. Va. Mar. 14, 2017) (citing *Salazar v. Holder*, No. 3:14-CV-23, 2015 WL 574800, at *5 (N.D.W. Va. Feb. 11, 2015)).

The only basis Petitioner provides for his assertion that exhaustion of administrative remedies would be futile is his disagreement with the responses he received to the complaints he filed. His assertion appears to relate to the merits of his claim more than the unwillingness of BOP officials to give him a fair shake in the administrative process. The procedure itself remained available to Petitioner and, despite his protestations otherwise, he had ample time to complete the process prior to filing a Petition with this Court. His failure to exhaust administrative remedies precludes review of the merits of his claims and requires dismissal of the Petition.

**CONCLUSION**

By separate Order which follows, the Petition for Writ of Habeas Corpus shall be dismissed.  Petitioner's Motions to Amend (ECF Nos. 9, 11, 14) are denied; and Respondent's Motions for Extension of Time (ECF No. 6) and to Withdraw as Attorney (ECF No. 16) are granted.

 

__9/24/25____                       _____/S/_____
Date                                Matthew J. Maddox
                                 United States District Judge